**Timothy S. DeJong,** OSB No. 940662
Email: tdejong@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone:     (503) 227-1600
Facsimile:     (503) 227-6840

**Nina Wasow** (to be admitted *pro hac vice*)
LEWIS, FEINBERG, LEE, RENAKER
& JACKSON, P.C.
476 9th Street
Oakland, California 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
nwasow@lewisfeinberg.com

[Additional counsel appear on signature page.]

***Attorneys for Plaintiff and the proposed class***

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KERRY D. AUSTIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNION BOND & TRUST CO., MORLEY CAPITAL MANAGEMENT and PRINCIPAL LIFE INSURANCE CO.,<br><br>Defendants. | Case No. 3:14-cv-00706<br><br>CLASS ACTION ALLEGATION<br><br>COMPLAINT<br>(Violation of Employee Retirement Income Security Act §§ 404, 406.; 29 U.S.C. §§ 1104, 1106) |

Page 1 **-**CLASS ACTION COMPLAINT

## PRELIMINARY STATEMENT

1.      The Principal Stable Value Fund ("Principal SVF" or "Fund") is an investment sold mainly to retirement plans.  As stated in its Fund Disclosure, the Fund's purpose is to preserve capital and offer "relatively stable returns consistent with its low risk profile," as well as liquidity.  In other words, the Principal SVF is marketed as a safe source of income for current and future retirees. However, as a result of the excessive costs of the Fund's investments, it has utterly failed to live up to this promise. This violates ERISA because the Fund's Investment Advisor and Trustee are fiduciaries of the employee benefit plans that invest in the Fund, and they have failed to fulfill their duty to prudently invest plan assets with an eye single to the interests of participants and beneficiaries.

2.      As of year-end 2013, the Fund had total assets in excess of $4 billion.  Almost all of these assets are invested in Stable Value Investment Contracts ("Investment Contracts"), including Guaranteed Investment Contracts ("GICs") and Synthetic Investment Contracts ("SICs"), financial products offered by insurance companies.  In a traditional GIC, investors pay money to the insurance company in exchange for a contract promising a return on the investment.  A SIC simulates the performance of a traditional GIC, but the investor instead owns the assets underlying the GIC, rather than the contract itself.  SICs utilize "wrap" agreements that enable investors to manage risk and place a specific value on these assets.  Wrap agreements provide that participants will receive the assets' book value even if the market value falls.

3.      Union Bond & Trust Co. ("Union") is the Trustee of the Principal SVF.  Morley Capital Management ("Morley") is the Investment Advisor to the Principal SVF.  Under Union's supervision and control, Morley selects the providers to be included in the Fund and reviews and negotiates the Investment Contracts.

Page 2 -CLASS ACTION COMPLAINT

4.      In 2013, 9.25% of the assets in the Principal SVF – approximately $400 million – were invested in one or more SICs issued by Defendant Principal Life Insurance Company ("Principal Life") (the "Principal SIC").  Other Investment Contract providers to the Fund included Prudential, MetLife, TIAA-CREF Life, and New York Life.

5.      Each of the Investment Contracts provides for a crediting rate, which is calculated based in part on the performance of the assets underlying the Investment Contracts.  Participants in retirement plans that invest in the Principal SVF are credited with returns based on the blended crediting rates of all of the Investment Contracts.

6.      Principal Life and, upon information and belief, each of the other providers of Investment Contracts to the Fund, retains the difference between the actual return on investment of the assets underlying the Investment Contracts and the crediting rate, known as the "spread." Upon information and belief, although investment returns have increased during the relevant time period, providers have consistently lowered the crediting rates and retained ever-larger spreads.

7.      In addition to the spread, each of the providers charges a fee to the Fund which is passed on to the retirement plans that invest in the Fund, along with other operational expenses such as accounting and valuation services.  These costs are referred to collectively as Fund-Level Expenses.  Union and its sub-advisors also charge fees to the Fund which are passed on to plans. Finally, plans that opt to have Principal Life provide recordkeeping and administrative services pay an additional fee for such services.  According to the Principal SVF's Fund Disclosure, plans are charged a total of 87 basis points in fees to invest in the Fund.

8.      In 2013, the annual rate of return for the Principal SVF was 0.84%.  This rate has declined over time, falling, for instance, from 2.20% in 2010 to 1.79% in 2011 to 1.27% in 2012.

Page 3 -CLASS ACTION COMPLAINT

9.      By permitting SIC and GIC issuers to set crediting rates and retain spreads as alleged herein, the Investment Contracts allow their issuers to set their own compensation and to collect unreasonable and/or excessive fees.  These fees are not disclosed.  Morley boasts that it "combines investigative fundamental research from the firm's analysts with selective use of comprehensive quantitative screening techniques to monitor portfolios" and "establishes detailed investment guidelines and restrictions" to control key risk areas including the interest rate.  But any benefits purportedly afforded by Morley's involvement are entirely overshadowed by the Principal SVF's dismal performance, which stems from the excessive fees, both hidden and disclosed, built into the structure of the Fund.

10.      Because Union and Morley exercise discretionary authority over plan assets invested in the Fund, they owe fiduciary duties to plan participants.  Union's fiduciary status is explicitly acknowledged in the Fund Disclosure. Union and Morley have breached these duties by investing plan assets in Investment Contracts that charge excessive undisclosed fees, and charging participants at least 87 basis points in additional, disclosed fees.

11.      In addition, Principal Life and Morley are fiduciaries of the Plans with respect to their management and administration of the Principal SIC.  Morley holds a Segregated Portfolio of plan assets pursuant to the Principal SIC and exercises exclusive control over the investment of these assets.  Principal Life determines the Crediting Rate and thus determines the value of the Principal SIC to plans participating in the Fund; it also sets its own fees by determining the spread it will retain.

12.      Accordingly, Defendants have breached their fiduciary duties and engaged in transactions prohibited under the Employee Retirement Income Security Act of 1974 (ERISA).

Page 4 -CLASS ACTION COMPLAINT

13.     As a result of Defendants' actions, the assets of plans investing in the Fund were diminished.  Plaintiff seeks damages and equitable relief on behalf of the class.

## JURISDICTION

14.     Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), (3).  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## VENUE

15.     Venue lies in the District of Oregon pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because one or more of the Defendants resides within or may be found in this District and/or the breaches alleged took place in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES AND THE PLANS

16.     At all relevant times herein, Plaintiff Kerry Austin has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Performance Contracting Group, Inc. ESOP/401(k) Plan.  At all relevant times, Austin has directed that assets allocated to his account in the Plan be invested in the Principal SVF.  Austin resides in Overland Park, Kansas.

17.     At all relevant times, the Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  ERISA-governed individual account retirement plans that invest in the Fund are referred to collectively herein as "the Plans."

Page 5 - CLASS ACTION COMPLAINT

18.    Defendant Union is a subsidiary of Morley and an indirect wholly owned

subsidiary of Principal Financial Group, Inc ("PFG").  Union is headquartered in Portland,

Oregon.

19.    Defendant Morley is a wholly owned subsidiary of Morley Financial Services,

Inc., which is a wholly owned subsidiary of PFG.  Morley is an investment manager specializing

in fixed income and stable value fund products.  Morley is headquartered in Portland, Oregon.

20.    Defendant Principal Life is a wholly-owned subsidiary of PFG, operating as an

insurance company.  Principal Life and PFG are headquartered in Des Moines, Iowa.

## FACTS

**A.    The Principal SVF**

21.     The Principal SVF is a collective investment trust established in January 1997.

Only employer-sponsored, tax-qualified defined contribution retirement plans are eligible to

invest in the Fund.

22.    The Fund is not guaranteed or insured by the Federal Deposit Insurance

Corporation or any other government agency, and units of the Fund are not registered with the

Securities and Exchange Commission or subject to the Securities Act of 1940.  The Fund seeks

to provide preservation of capital, but does not guarantee against the loss of principal.  To

achieve its objectives, the Fund invests approximately 90% of its assets in Investment Contracts.

The remaining Fund assets are invested in cash and cash equivalents.  The underlying assets of

SICs in which the Fund invests include, but are not limited to, U.S. Treasury Debt, municipal

and corporate bonds, mortgage and asset backed securities, and derivatives.

23.    The unit price of the Fund is determined on a daily basis by Union.  The price is

computed by determining the current or fair value of the assets of the Fund, deducting all

Page 6 -CLASS ACTION COMPLAINT

expenses and liabilities of the Fund (exclusive of the Trustee/Advisor fees, described below), and dividing by the number of units outstanding. Each plan that invests in the Fund is assigned a Trading Unit Price that is net of the Trustee/Advisor fee and the Principal Life service fee.

24.     Withdrawals from the Fund are restricted. Participants in the Plans are allowed to either redeem units of the Fund for benefit payments, or reinvest in options that do not compete with the Fund. Transfers must be held in a non-competing investment option for a minimum of 90 days before a transfer to a competing option can occur. A plan sponsor must give the Fund a full year's advance written notice to effect a sponsor-directed withdrawal of assets invested in the Fund. Participating plans may redeem their units – subject to these and other restrictions – but may not transfer them other than by redemption; there is no public market for units of the Fund.

25.     Union is paid an average annual fee of .08% of assets under investment in the Fund for its services as Trustee. Union pays Morley an annualized fee of .04% of assets under investment in the Fund, though the Fund Disclosure asserts that it is not an additional direct expense of the Fund or the plans invested in the Fund.

26.     In addition, Union charges Plans numerous "Fund-Level Expenses," including: fees and expenses relating to the purchase and holding of Investment Contracts, fees for investment advisory services provided by advisors not affiliated with Union and fees for investment advisory services provided by any Sub-Advisor, administration-related fees such as audit, portfolio accounting, attorneys' fees and litigation expenses, commissions and taxes, "extraordinary or unusual expenses or liabilities relating to the administration of the Collective Trust . . . which the Trustee, in its discretion, deems applicable," and "any other expense, claim, or charge properly payable from the Fund under the Declaration of Trust or applicable law."

Page 7 -CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

The Fund Disclosure states that total Fund-Level Expenses are 0.27%, but it elsewhere states that Union pays an annual fee of 0.14-0.15% to each Sub-Advisor, and 0.22% to 0.25% to each of the issuers of the Contracts.

27.     The Fund Disclosure for 2013 states that all expenses – including the Trustee/Advisor Fee, Fund-Level Expenses, and the Service Fee charged to plans which have Principal Life provide administrative and recordkeeping services – total 0.87%.

28.     Aside from these fees, which are disclosed (albeit in a dense and confusing document only available upon telephonic request to Morley), the Fund in effect charges additional fees to Plan participants by investing in Investment Contracts that permit their issuers to retain unlimited spreads.  The Fund Disclosure hints at this, stating that the "Fund's yield may not reflect prevailing market interest rates.  The crediting rate for Synthetic Investment Contracts and Stable Separate Account Contracts is based on the yield to maturity of the associated assets, but also includes adjustments for differences between the market value and the book value of the covered assets over the duration of the contract."  However, the Fund Disclosure does not state that Investment Contract issuers set their own compensation by determining the Crediting Rate, or that the difference between the performance of the assets underlying the Investment Contracts and the Crediting Rate is retained by the issuers.

29.     The result is incredibly poor performance by an investment vehicle that advertises itself as preserving capital and providing liquidity for retirement plans.

30.     Comparing the performance of the Fund with Hueler Companies' Stable Value Indices, an industry benchmark, shows that the Fund consistently provides substantially lower Crediting Rates than do similar funds:

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840



**B.**      <u>The Principal SIC</u>

31.      The Fund and Principal Life entered into the Principal SIC (in the form of a Group Annuity Contract) on March 19, 2013. The Fund's investment was $250 million at the outset of the contract, and an additional $150 million invested in October 2013.

32.      Morley is the Investment Manager for the Principal SIC, defined as the "fiduciary that has been retained to manage the assets of the Segregated Portfolio." The Segregated Portfolio is the portfolio of Principal SVF assets established with regard to the Principal SIC; it consists entirely of Plan assets.

33.      Morley has discretion under the Principal SIC to select the investments in the Segregated Portfolio and to liquidate or transfer these investments in accordance with the Principal SIC's investment guidelines. Principal Life is permitted to terminate the contract on 30

Page 9 -CLASS ACTION COMPLAINT

days' notice for various reasons, including the Fund permitting anyone other than Morley to exercise discretion or control over the Segregated Portfolio.

34. The Principal SIC provides for a Contract Value Record, which is an accounting record of the daily value of the contract. The Contract Value Record is calculated by reference to the initial value of the contract and the Crediting Rate.

35. The initial Crediting Rate for the Principal SIC was 0.77%. The contract provides that Principal Life will recalculate the Crediting Rate every month using a formula specified in the contract. The minimum Crediting Rate is 0%. In other words, Principal Life does not guarantee any return on the Fund's (and consequently the Plans') investment in the Principal SIC.

36. Upon information and belief, Principal Life continuously reduced the crediting rate in its GICs and SICs between 2008 and 2011. Principal Life's investment contract business was highly profitable during this time period, and on information and belief, its general portfolio net investment income increased. Principal Life did not pass on increased earnings to Plans that invested in its investment contracts.

37. Upon information and belief, during the relevant time period, Principal made annual profits of between $90 and $160 million from investment contracts held by retirement plans.

38. In addition to the compensation it received based on the difference between the Crediting Rate and actual investment earnings, Principal Life charges a fee to the Fund in the amount of 0.20% of the Contract Value Record per year.

39. The Principal SIC does not guarantee payment of any particular benefit to Plans or their participants. It promises an unspecified rate of return for a period of time, but investment

Page 10 - CLASS ACTION COMPLAINT

risk is borne by the Plans because Principal Life can change the Crediting Rate at will, and

Morley has complete control over the investment decisions that inform the value of the contract.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1)

or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following

class of similarly situated persons ("the Class"):

> All participants in defined contribution employee pension benefit plans within the
>
> meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), who invested in the Principal
>
> SVF from six years before the filing of this action until the time of trial.

41.     The members of the class are so numerous that joinder of all members is

impracticable.  While the exact number of Class members is unknown at this time and can only

be ascertained through appropriate discovery, Plaintiff believes that there are, at a minimum,

thousands of members of the Class.

42.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class.  Among such

questions are:

(a) Whether Defendants were parties in interest with respect to the Plans;

(b) Whether Defendants were fiduciaries of the Plans;

(c) Whether the fees charged by Defendants in connection with the Principal SVF were

reasonable;

(d) Whether the Contracts gave their issuers unlimited discretion to determine the amount

of their own compensation;

(d) Whether the compensation paid to Defendants was unreasonable or excessive; and

Page 11 **-CLASS ACTION COMPLAINT**

(e) Whether Defendants' alleged breaches of fiduciary duty and prohibited transactions caused losses to the Plans and their participants and, if so, in what amount.

43.    There are no substantial individual questions among the class claims on the merits of this action, and Plaintiff is not aware of any conflicts between themselves and the putative class members.

44.    Plaintiff's claims are typical of the claims of the members of the putative class, as Plaintiff and all other members of the putative class were harmed by Defendants' wrongful conduct.  Plaintiff is aggrieved by the prohibited transactions and breaches of fiduciary duties he and all other class members have suffered at Defendants' hands, and is intent on seeing such wrongs remedied.  Plaintiff therefore is committed to fairly, adequately, and vigorously representing and protecting the interests of the members of the class, and has retained counsel competent and experienced in class action litigation of this nature for this purpose.  Neither Plaintiff nor his counsel have any interests that might cause them to refrain from vigorously pursuing the claims in this class action.  Thus, Plaintiff is an adequate representative of the class.

45.    Class certification of Plaintiff's Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

46.    In the alternative, class certification of Plaintiff's Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class.  The only individualized issues

Page 12 -CLASS ACTION COMPLAINT

will be the amount of damage each member of the Class incurred from the Fund's excessive fees and such damages can be readily calculated based on business records maintained by Defendants. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants have obtained wrongful profits through overcharges that are, on an individual level, small and difficult to detect but in the aggregate are enormous. Individual participants who have invested in the Fund, and even most Plans, have an insufficient stake in the outcome of this matter to devote substantial resources to pursue it.

47. On information and belief, the names and addresses of the class members are available from Defendants and/or the Plans, and adequate notice can be provided to members of the class to the extent required by Fed. R. Civ. P. 23.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3), Against Defendants Union and Morley]**

48. Plaintiff incorporates Paragraphs 1-47 as though set forth herein.

49. ERISA defines a fiduciary as anyone who exercises authority or control over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(a).

50. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

51. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

Page 13 -CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

52.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

53.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

54.     Defendants Union and Morley are fiduciaries with respect to Plans that invest in the Principal SVF: Morley, under Union's supervision and control, manages the Fund's investment of Plan assets.  Moreover, Union is explicitly identified in the Fund Disclosure as an ERISA fiduciary.

55.     Defendants Union and Morley breached their duties of prudence and loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  These breaches include but are not limited to the following:  imprudently selecting Investment Contracts for inclusion in the Fund that permit their issuers to set the crediting rates and retain the spreads, driving down the return on these investments to the Fund and, consequently, the Plans; permitting the Investment Contract issuers to charge fees on top of retaining the spreads; charging investors in the Fund additional fees which, together with the Fund-Level Expenses, are excessive; acting in their own interests or the interests of their affiliate companies by investing in the Principal SIC; and marketing the Fund as a safe investment for retirement plans when in fact it is extremely expensive relative to its poor performance.

Page 14 -CLASS ACTION COMPLAINT

56.     Union and Morley have profited from the fiduciary violations alleged herein in an amount to be proven at trial.

57.     Union and Morley's actions caused the Plans to incur losses from the excessive fees as well as the diminution in their investment returns over time caused by such excessive fees.  The amount will be proven at trial.

## SECOND CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3), Against Principal Life]**

58.     Plaintiff incorporates Paragraphs 1-47 as though set forth herein.

59.     ERISA defines a fiduciary as anyone who exercises authority or control over the management or disposition of plan assets.  29 U.S.C. § 1002(21)(a).

60.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

61.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

62.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

Page 15 -CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

63.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

64.     Defendant Principal Life is a fiduciary with respect to Plans that invest in the Principal SVF.  The Principal SIC is itself a Plan asset: it is included in the Fund in order to provide income to Plan participants, and the Segregated Portfolio is composed entirely of Plan assets.  The Principal SIC gives Principal Life discretionary authority to change the Crediting Rate and retain the spread, and thus exercise management and control over Plan assets.  Thus, Principal Life was a fiduciary of the Plans with respect to its management and administration of the Principal SIC.

65.     Principal Life breached its duties of prudence and loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  These breaches include but are not limited to the following: setting the Crediting Rate for its own benefit rather than for the benefit of Plans and participants; and setting the rate artificially low, including but not limited to reducing the rate even when the return on assets invested pursuant to the Principal SIC was growing.

66.     Principal Life has profited from the fiduciary violations alleged herein in an amount to be proven at trial.

67.     Principal Life's actions caused losses to the Plans in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a),
29 U.S.C. §§ 1106(a)-(b), Against All Defendants]**

68.     Plaintiff incorporates Paragraphs 1-47 as though set forth herein.

Page 16 -CLASS ACTION COMPLAINT

69.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

70.     ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2), provides a conditional exemption from the prohibited transaction rules for "[c]ontracting . . . with a party interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."

71.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

72.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

73.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

74.     ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), defines any person providing services to an employee benefit plan as a party in interest.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

75.     Defendants, and each of them, were parties in interest with respect to the Plans because they provided services to the Plans and because they were fiduciaries of the Plans, as set forth in Paragraphs 10-11, 54, and 64, above.

76.     Defendants Union and Morley engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by selling the Fund to the Plans and receiving more than reasonable compensation for the services provided.  Defendant Principal Life engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by retaining for itself an excessive portion of the spread between its investment earnings and the Crediting Rate, on top of charging a direct fee for administering the Principal SIC.

77.     As a result of these prohibited transactions, Defendants caused losses to the Plans from the excessive fees and the diminution in value of investment returns to the Plans over time caused by such excessive fees in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### [Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b), 29 U.S.C. §§ 1106(a)-(b), Against All Defendants]

78.     Plaintiff incorporates Paragraphs 1-47 and 69-77 as though set forth herein.

79.     ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

80.     Pursuant to ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2), this prohibition does not apply to a fiduciary "receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan."

81.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

Page 18 **-**CLASS ACTION COMPLAINT

duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

82.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

83.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

84.     Defendants were fiduciaries of the Plans, as set forth in Paragraphs 10-12, 54, and 64, above.

85.     Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the Plan assets in the Fund in their own interest or for their own account.  Specifically, Morley and Union opted to invest Fund assets in the Principal SIC, resulting in fees flowing back to their affiliate company, Principal Life.  Principal Life set the Crediting Rate for its own benefit rather than for the benefit of Plans and participants, and set the Rate artificially low, that is, reducing the Rate even when the return on assets invested pursuant to the Principal SIC was growing.

86.     Defendants caused losses to the Plans by these prohibited transactions in an amount to be proven at trial.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

### As to the First Claim for Relief:

A.      Certify this action as a class action and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B.      Declare that Defendants Morley and Union have breached their fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

C.      Enjoin Defendants Morley and Union from further violations of their fiduciary responsibilities, obligations, and duties;

D.      Order that Defendants make good to the Plans the losses resulting from their breaches of fiduciary duty;

E.      Order that Defendants disgorge any profits that they have made through breaches of fiduciary duty or knowing participation in breaches of fiduciary duty and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of fiduciary breaches or knowing participation in such breaches;

F.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

G.      Order Defendants to pay prejudgment interest; and

H.      Award such other and further relief as the Court deems equitable and just.

### As to the Second Claim for Relief:

I.      Certify this action as a class action and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

Page 20 - CLASS ACTION COMPLAINT

J.      Declare that Defendant Principal Life has breached its fiduciary responsibilities to the Plaintiff Class;

K.      Enjoin Defendant Principal Life from further violations of its fiduciary responsibilities, obligations, and duties;

L.      Order that Defendant Principal Life make good to the Plans the losses resulting from its breaches of fiduciary duty;

M.      Order that Defendant Principal Life disgorge any profits it has made through breaches of fiduciary duty and impose a constructive trust and/or equitable lien on any funds received by Defendant Principal Life in the course of or as a result of fiduciary breaches or knowing participation in such breaches;

N.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

O.      Order Defendant Principal Life to pay prejudgment interest; and

P.      Award such other and further relief as the Court deems equitable and just.

### As to the Third and Fourth Claims for Relief:

Q.      Certify this action as a class action and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

R.      Declare that Defendants, and each of them, have engaged in prohibited transactions with respect to the Plans;

S.      Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations, and duties;

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

T.      Order that Defendants make good to the Plans the losses resulting from these prohibited transactions;

U.      Order that Defendants disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of prohibited transactions;

V.      Order that Defendants provide other appropriate equitable relief to the Plans including, but not limited to, providing an accounting for profits and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

W.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

X.      Order Defendants to pay prejudgment interest; and

Y.      Award such other and further relief as the Court deems equitable and just.

DATED this 29th day of April, 2014.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Timothy S. DeJong
        Timothy S. DeJong, OSB No. 940662

209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
tdeJong@stollberne.com

-AND-

Page 22 - CLASS ACTION COMPLAINT

Nina Wasow (to be admitted *pro hac vice*)
Lewis, Feinberg, Lee, Renaker & Jackson, P.C.
476 9th Street
Oakland, California 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
nwasow@lewisfeinberg.com

-AND-

John F. Edgar (to be admitted *pro hac vice*)
Boyce N. Richardson
EDGAR LAW FIRM LLC
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
jfe@edgarlawfirm.com
bnr@edgarlawfirm.com

-AND-

Garrett W. Wotkyns (to be admitted *pro hac vice*)
Michael McKay (to be admitted *pro hac vice*)
SCHNEIDER WALLACE COTTRELL & KONECKY LLP
8501 North Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0141
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com

-AND-

Todd Schneider
Jason Kim
SCHNEIDER WALLACE COTTRELL
& KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
jkim@schneiderwallace.com

***Attorneys for Plaintiff and the proposed class***

Page 23 -CLASS ACTION COMPLAINT